*Garbinski v. Nationwide Property and Casualty Ins. Co., et al.*

### UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of June, two thousand thirteen.

PRESENT:

> GUIDO CALABRESI,
> JOSÉ A. CABRANES,
> BARRINGTON D. PARKER,
>     *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

GREGORY J. GARBINSKI,

>       *Plaintiff-Counter-Defendant-Appellant,*

BMG INSURANCE AND FINANCIAL SERVICES, INC.,

>       *Counter-Defendant,*

>       -v.-                                                  No. 12-3797

NATIONWIDE PROPERTY AND CASUALTY INS. CO.,
NATIONWIDE MUTUAL INSURANCE COMPANY, NATIONWIDE
LIFE INSURANCE COMPANY, NATIONWIDE GENERAL INS. CO.,
COLONIAL COUNTY MUTUAL INS. CO., NATIONWIDE INS. CO.
OF FLORIDA, NATIONWIDE ASSURANCE CO., NATIONWIDE
LLOYDS, NATIONWIDE MUTUAL FIRE INS. CO.,

>       *Defendants-Counter-Claimants-Appellees,*

NATIONWIDE SECURITIES LLC, FREDERICK W. OWENS,

CYNTHIA TOLSMA, GEORGE ROBINSON, JR., CHRISTOPHER
KELLY,

        *Defendants.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**FOR PLAINTIFF-COUNTER-DEFENDANT-APPELLANT:**

                        David L. Weiss, Cohen and Acampora, East
Haven, CT.

**FOR DEFENDANTS-COUNTER-CLAIMANTS-APPELLEES:**

                        Quintin F. Lindsmith, James P. Schuck, Bricker
& Eckler LLP, Columbus, OH.

        Appeal from the July 26, 2012 judgment of the United States District Court for the District of Connecticut (Vanessa L. Bryant, *Judge*).

        **UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the July 26, 2012 judgment of the District Court be **AFFIRMED**.

        Plaintiff-counter-defendant-appellant Gregory J. Garbinski appeals from an order of the District Court granting summary judgment to defendants-counter-claimants-appellees, referred to here collectively as "Nationwide." Garbinski brought various claims against Nationwide, for whom he formerly served as an insurance sales agent, after his contract was, in his view, illegally cancelled. "We review *de novo* a district court's grant of summary judgment after construing all evidence, and drawing all reasonable inferences, in favor of the non-moving party." *Sotomayor v. City of New York*, 713 F.3d 163, 164 (2d Cir. 2013). We assume familiarity with the underlying facts and procedural history of this case.

## BACKGROUND

        Garbinski's history with Nationwide began in 1992, when he joined Nationwide's Agent Development Program as an employee. Over the next ten years, Garbinski worked for Nationwide in various capacities, at times as an employee and at times as an independent contractor. In 2003, Garbinski, then in Connecticut, formed BMG Insurance & Financial Services ("BMG"), and entered into an Independent Contractor Agent's Agreement ("ICA Agreement" or "contract") with Nationwide, pursuant to which Garbinski became an independent contractor selling Nationwide Insurance policies. Notably, the contract contained a provision entitled "General Conduct and Representation," which provided that "[y]ou will maintain a good reputation in the community that

2

you serve and will direct your efforts in the field of insurance toward advancing the business and interest of [Nationwide] to the best of your ability." Joint App'x 34.

On March 22, 2009, Garbinski got into a particularly ugly dispute with his wife. Drunk and on methadone, Garbinski threatened her with a gun and held her captive for one or two hours while the police surrounded their house. Eventually, Garbinski's wife escaped while he used the bathroom, and, sometime later, Garbinski yielded and was taken into custody. The incident was covered by local and Internet media. Invoking the "General Conduct and Representation" clause of the ICA Agreement, Nationwide then cancelled his contract.

Garbinski subsequently sued Nationwide, making a number of claims stemming from this allegedly improper termination. On July 26, 2011, the District Court granted Nationwide's motion to dismiss as to several of these claims, and, on July 24, 2012, the District Court granted Nationwide's motion for summary judgment as to the remaining claims.

Garbinski has appealed only the District Court's grant of summary judgment to Nationwide on four of his claims, which are that: (1) Nationwide violated Connecticut's Franchise Act, Conn. Gen. Stat. §§ 42-133e to 42-133g; (2) Nationwide violated Connecticut's Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b; (3) Nationwide tortiously interfered with his business expectancy; and (4) Nationwide breached the implied covenant of good faith and fair dealing. In substance, the District Court held that Garbinski was not covered by the Franchise Act, and, inasmuch as his other claims relied on his Franchise Act claim, all of his claims failed as a matter of law. Garbinski also appeals the District Court's grant of summary judgment to Nationwide on its counterclaims for amounts due on loans made to Garbinski and BMG.

## DISCUSSION

As Garbinski concedes, all of his claims on appeal depend on his claim under the Franchise Act. *See* Appellant's Br. 29-32. In other words, if the District Court correctly granted summary judgment to Nationwide on the Franchise Act claim, then so too was summary judgment properly awarded as to the Unfair Trade Practices Act claim, the tortious interference claim, and the implied covenant of good faith and fair dealing claim, as well as the counterclaims for amounts due. *See Garbinski v. Nationwide Mut. Ins. Co.*, No. 3:10cv1191(VLB), 2012 WL 3027918, at *11-18 (D. Conn. July 24, 2012) (granting summary judgment as to the remaining claims in light of the failure of Garbinski's Franchise Act claim).[1]

---

[1] We note that the District Court granted summary judgment to Nationwide on its counterclaims for amounts due both "[b]ecause no reasonable jury could find in favor of Garbinski on Nationwide's Counterclaim, and because Garbinski has waived any argument as [to] the Counterclaim." *Garbinski*, 2012 WL 3027918, at *18. Garbinski now challenges this decision on appeal, arguing, in essence, that if we reverse the judgment of the District Court as to his

As we have explained, Connecticut's "Franchise Act was passed for the purpose of correcting abuses in relationships between franchisees and franchisors." *Grand Light & Supply Co. v. Honeywell, Inc.*, 771 F.2d 672, 677 (2d Cir. 1985). In pursuit of this goal, the Franchise Act forbids franchisors from cancelling franchises "except for good cause which shall include, but not be limited to the franchisee's refusal or failure to comply substantially with any material and reasonable obligation of the franchise agreement." Conn. Gen. Stat. § 42-133f(a).[2] The Act also requires that franchisors provide at least sixty days' notice prior to cancellation. *Id.*

The Act defines a "franchise" as follows:

"Franchise" means an oral or written agreement or arrangement in which (1) a franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor, provided nothing contained herein shall be deemed to create a franchisor-franchisee relationship between the grantor and grantee of a lease, license or concession to sell goods or services upon or appurtenant to the premises of the grantor, which premises are occupied by the grantor primarily for its own independent merchandising activities; and (2) the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the franchisor or its affiliate, and includes any agreement between a manufacturer, refiner or producer and a distributor, wholesaler or jobber, between a manufacturer, refiner or producer and a retailer, or between a distributor, wholesaler or jobber and a retailer . . . .

Conn. Gen. Stat. § 42-133e(b). The Connecticut Supreme Court has held that "[t]he definition requires a two-step inquiry. First, the franchisee must have the right to offer, sell or distribute goods or services. Second, the franchisor must substantially prescribe a marketing plan for the offering,

---

claims, then he would also have a viable defense to the counterclaims brought by Nationwide. Whether or not Garbinski is entitled to make this argument on appeal when he did not raise it below, we reject it for the reasons stated below.

[2] In relevant part, Conn. Gen. Stat. § 42-133f provides:

(a) No franchisor shall, directly, or through any officer, agent or employee, terminate, cancel or fail to renew a franchise, except for good cause which shall include, but not be limited to the franchisee's refusal or failure to comply substantially with any material and reasonable obligation of the franchise agreement . . . . The franchisor shall give the franchisee written notice of such termination, cancellation or intent not to renew, at least sixty days in advance to such termination, cancellation or failure to renew with the cause stated thereon . . . . The provisions of this section shall not apply (1) where the alleged grounds are voluntary abandonment by the franchisee of the franchise relationship, in which event, such notice may be given thirty days in advance of such termination, cancellation or failure to renew, or (2) where the alleged grounds are the conviction of the franchisee in a court of competent jurisdiction of an offense punishable by a term of imprisonment in excess of one year and directly related to the business conducted pursuant to the franchise, in which event, such notice may be given at any time following such conviction and shall be effective upon delivery and written receipt of such notice.

4

selling or distributing of goods or services." *Getty Petroleum Mktg., Inc. v. Ahmad*, 253 Conn. 806, 813 (2000) (quotation marks omitted).

The District Court held that this definition does not apply to insurance agents in general or to the relationship between Garbinski and Nationwide in particular. *See Garbinski*, 2012 WL 3027918, at *6-9. Although we make no comment on whether an insurance agent may ever be a franchisee, we agree with the District Court that, based on the undisputed facts in the record, no reasonable juror could find that Garbinski and Nationwide entered into a franchise relationship as contemplated by the Franchise Act.

In particular, the District Court observed that "unlike in a typical franchise, Garbinski did not buy the insurance products from Nationwide before reselling them to clients, nor was he required to do so or meet any minimum sales quota. Rather, Nationwide owned the policies it issued; Garbinski was a commissioned sales representative and never owned the policies himself." *Id.* at *9. These precise factors led the Connecticut Supreme Court to find that the alleged franchisee in *Getty Petroleum Marketing* did not "have the right to offer, sell or distribute goods or services" as required for a franchise relationship under the Act. 253 Conn. at 813-15. Inasmuch as we see no principled distinction between the alleged franchisee in *Getty Petroleum Marketing* and Garbinski, we conclude that Garbinski was not covered by the Connecticut Franchise Act.

In short, the District Court correctly held that no reasonable juror could find that a franchise relationship, pursuant to the Franchise Act, existed between Garbinski and Nationwide. As the District Court explained, *Garbinski*, 2012 WL 3027918, at *11-18, and as Garbinski agrees, Appellant's Br. 29-32, neither Garbinski's remaining claims nor his defense to Nationwide's counterclaims can stand without the Franchise Act claim. The District Court therefore correctly granted summary judgment to Nationwide as to Garbinski's remaining claims as well as Nationwide's counterclaims.

## CONCLUSION

We have reviewed the record and the parties' arguments on appeal. For the reasons set out above, we **AFFIRM** the July 26, 2012 judgment of the District Court.

> FOR THE COURT,
> Catherine O'Hagan Wolfe, Clerk of Court

5